IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

_____

UNITED STATES OF AMERICA,                )
                                         )
     Plaintiff,    )
                                         )
  v.                            )  Civil Action No.
                                         )
CHEMICAL SOLVENTS, INC.                  )
                                         )
     Defendant.   )
_____)

## COMPLAINT

  The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting on behalf of the Administrator of the United States Environmental Protection Agency, alleges as follows:

### NATURE OF ACTION

  1. The United States brings this civil action against Chemical Solvents, Inc. ("Defendant") for civil penalties and injunctive relief as a result of violations of the Clean Air Act ("CAA"), the Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA"), those Acts' implementing regulations, and Defendant's related permits.  This action is based on violations that occurred at Defendant's solvent reclamation, chemical blending, and commodity chemicals business, located near the intersection of Jennings Road and Old Denison Road in southern Cleveland.  Among other things, those violations caused the emission of hazardous pollutants to the air and discharges of pollutants into the public sewer system in amounts greater than allowed by law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action.  28 U.S.C. §§ 1331, 1345, and 1355; 42 U.S.C. § 7413(b) (CAA); 33 U.S.C. § 1319(b) (CWA); and 42 U.S.C. § 6928(a) (RCRA).

3.      Venue is proper because the violations at issue occurred in this judicial district, and Chemical Solvents, Inc. is located in and does business in this district. 28 U.S.C. § 1391(c); 42 U.S.C. § 7413(b) (CAA); 33 U.S.C. § 1319(b) (CWA); and 42 U.S.C. § 6928(a) (RCRA).

## NOTICES

4.      On September 28, 2012, and December 3, 2014, EPA issued to Defendant CAA Notice and Finding of Violations ("NOVs").  EPA provided a copy of the NOVs to the State of Ohio as required by Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

5.      On March 4, 2010, April 30, 2012, January 22, 2013, and August 29, 2014, EPA issued to Defendant RCRA NOVs.  EPA provided a copy of these NOVs to the State of Ohio prior to filing this action, as required by RCRA Section 3008(a), 42 U.S.C. § 6928(a).

6.      The United States provided notice of commencement of this action to the State of Ohio in accordance with the Acts.  42 U.S.C. § 7413(b) (CAA); 33 U.S.C. § 1319(b) (CWA); 42 U.S.C. § 6928(a) (RCRA).

## AUTHORITY

7.      Authority to bring this action is vested in the United States Attorney General.  28 U.S.C. §§ 516 and 519; 42 U.S.C. § 7605 (CAA); 33 U.S.C. § 1366 (CWA); 42 U.S.C. § 6928(a) (RCRA).

**DEFENDANT**

8.      Defendant Chemical Solvents, Inc. is, and at all times relevant to this action has

been, a corporation organized and existing under the laws of the State of Ohio and doing

business in Ohio.

9.      Defendant is the current owner and operator of a solvent reclamation, chemical

blending, and commodity chemical business that is conducted at 3751 Jennings Road

("Jennings") and 1010 Old Denison Road ("Denison") in Cleveland, Ohio.  Jennings and

Dennison (together the "Facility") are adjacent and interrelated.  At all times relevant to this

action, Defendant has owned and operated the Facility.

10.     Defendant is, and at all times relevant to this action has been, a "person" under

the Acts.  42 U.S.C. § 7602(e) (CAA); 33 U.S.C. § 1362(5) (CWA); 42 U.S.C. § 6903(15)

(RCRA).

11.     The Facility emits volatile organic compounds and hazardous air pollutants

including acetone, xylene, methyl ethyl ketone, trichloroethylene, and methanol.

12.     The Facility discharges wastewater containing pollutants including carbon

tetrachloride, methylene chloride, tricholoroethylene, tetrachloroethylene, toluene, and vinyl

chloride.

13.     Since approximately May 14, 1993, the Facility has been a waste management

operation that receives off-site material.

14.     Since approximately May 14, 1993, Denison has been regulated as a hazardous

waste treatment, storage, or disposal facility under RCRA.

3

**A.    Jennings**

15.    Defendant conducts its commodity chemical business from Jennings, where it unloads, loads, and repackages chemicals.  Defendant loads chemicals into tanks, containers, railcars, and tanker trucks, from which they can volatilize into the atmosphere.  A solvent loading rack is used to load and unload chemicals to tanks and tanker trucks.  To control these emissions, Defendant uses a vapor recovery system at Jennings.

**B.    Denison**

16.    Defendant conducts solvent reclamation and chemical blending operations at Denison.  At Denison, Defendant receives waste solvents generated from industrial users such as paint, printing, metal fabricating, electronics, and fiberglass manufacturing companies.  The waste solvents Defendant reclaims include materials from hazardous waste operations.  For the waste solvent Defendant does not reclaim, it either blends the waste solvent into fuel and sells it to a third party or disposes of it off-site.

17.    Defendant receives waste solvent in bulk or drum shipments and stores it in above-ground storage tanks.  Defendant uses a solvent loading rack to transfer the waste solvent between tanks and tanker trucks or railcars.  To control these emissions, Defendant uses a vapor recovery system at Denison that consists of a chilled condenser.  The condenser chills the gases so they become liquid and can be removed.

18.    Defendant has used two thin-film evaporators, known as LUWAs 1 and 2, to reclaim waste solvent.  According to Defendant, it has not used LUWA 1 since August 2011.  Defendant continues to use LUWA 2.

**C.**     **Facility Inspections**

19.     On March 18-20, 2009, EPA and Ohio EPA conducted a RCRA inspection of the Facility.

20.     On June 25-27, 2012, EPA conducted a CAA and RCRA inspection of the Facility.

21.     On November 7-8, 2013, EPA and the Northeast Ohio Regional Sewer District ("NEORSD") conducted a CWA inspection of the Facility.

22.     On January 22-23, 2014, EPA conducted a CAA site visit at the Facility.

## STATUTORY BACKGROUND

**A.**     **Overview of Relevant Statutes**

23.     The CAA establishes a framework designed to protect and enhance the quality of the Nation's air so as to promote public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401.

24.     The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA and its implementing regulations prohibit the discharge of pollutants into navigable waters of the United States by any person, except in compliance with a permit, among other requirements.

25.     RCRA establishes a comprehensive program to be administered by EPA and authorized States for regulating the generation, transportation, and treatment, storage, and disposal of hazardous waste.  42 U.S.C. §§ 6901-6992k.

5

**B.     Applicable Enforcement Provisions**

26.     Under the CAA, CWA, and RCRA, the United States may bring a civil action for civil penalties and appropriate relief, including a temporary or permanent injunction, when any person has violated, or is currently in violation of, the CAA, RCRA, CWA, or their implementing regulations.  42 U.S.C. § 7413(b); 33 U.S.C. § 1319(b); 42 U.S.C. § 6928(a).

27.     Any person who violates any requirement of the CAA, CWA, or RCRA or their respective implementing regulations is subject to a maximum statutory civil penalty of up to $25,000 per day for each violation, as adjusted for inflation, with each day in which a violation occurs constituting a separate violation.  42 U.S.C. § 7413(e); 33 U.S.C. § 1319(d); 42 U.S.C. § 6928(g).

28.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act of 2015, 28 U.S.C. § 2461 note: Pub. L. 114-74, Section 701, the maximum statutory civil penalties under the CAA, CWA, and RCRA have been adjusted for inflation at 40 C.F.R. § 19.4.  The applicable civil penalty levels are:

| DATE RANGE | CAA | CWA | RCRA |
|---|---|---|---|
| March 15, 2004- January 11, 2009 | $32,500 | $32,500 | $32,500 |
| January 12, 2009- November 2, 2015 | $37,500 | $37,500 | $37,500 |
| On or after November 3, 2015 | $97,229 | $53,484 | $72,718 |

## CLEAN AIR ACT REQUIREMENTS

**A.    National Ambient Air Quality Standards**

29.    The CAA requires EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for seven "criteria" air pollutants. 42 U.S.C. §§ 7408-8409.  Volatile organic compounds ("VOCs") are a precursor to ozone, which is one of the seven criteria air pollutants.

30.    The CAA requires each state to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, including ozone, or where the air quality cannot be classified due to insufficient data.  42 U.S.C. § 7407(d).  An area where the air quality meets the NAAQS for a particular pollutant is an "attainment" area.  An area whose air quality does not meet the NAAQS is a "nonattainment" area.

31.    From July 20, 2012 to January 6, 2017, Cuyahoga County, Ohio, where Defendant's Facility is located, was classified as nonattainment for the 2008 ozone NAAQS.  77 Fed. Reg. 30087 (May 21, 2012).  Since August 3, 2018, Cuyahoga County has been in nonattainment with the 2015 ozone NAAQS.  83 Fed. Reg. 25823 (June 4, 2018).

**B.    State Implementation Plan**

32.    Pursuant to 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the implementation, maintenance, and enforcement of the NAAQS.  Each SIP must include enforceable emission limitations.  42 U.S.C. § 7410(a)(2)(A).

33.    Once EPA approves the state's emission limitations, these provisions constitute the state's "applicable implementation plan."  The provisions are considered that state's "SIP Rules" and are federally enforceable.  42 U.S.C. §§ 7413(a)(1) and (b)(1); 40 C.F.R. § 52.23.

7

34.     On January 22, 2003, EPA approved Ohio Administrative Code ("OAC") 3745-31-05 as part of Ohio's federally-enforceable SIP.  OAC 3745-31-05(A) authorizes the director of the Ohio EPA to issue a permit to install to a source of air pollutants, including VOCs.

35.     The Ohio SIP defines a VOC as any organic compound that participates in atmospheric chemical reactions.  OAC 3745-21-01(B)(6).

36.     OAC 3745-31-05(D) states that the director of the Ohio EPA, in a permit to install and operate, "may impose such special terms and conditions as are appropriate or necessary to ensure compliance with applicable laws and to ensure adequate protection of environmental quality. . . Such terms and conditions shall be federally enforceable and may restrict the stationary source's potential to emit below major source thresholds, below thresholds for other Clean Air Act requirements, or place other restrictions on an air contaminant source or stationary source in order to avoid a Clean Air Act requirement."

## C.     Chemical Solvents' Air Permit

37.     Ohio EPA issued a Federally Enforceable Permit to Install and Operate, P0094783, to Defendant on August 16, 2011 ("2011 FEPTIO").  That permit was renewed by the State on January 4, 2017, and remains in effect ("2017 FEPTIO").

38.     Both FEPTIOs are federally enforceable.  OAC 3745-31-05(D).

### 1.     FEPTIO Requirements for Solvent Loading Racks

39.     Part C.1 of the 2011 FEPTIO and 2017 FEPTIO includes requirements that apply to the solvent loading racks with vapor recovery systems at the Facility.

40.     Part C.1.b.2.d of the 2011 FEPTIO and Part C.1.b.2.b of the 2017 FEPTIO require all VOC emissions from the solvent loading racks to be vented to a vapor recovery system that

meets the operational, monitoring, and recordkeeping requirements of the FEPTIO when one or both of the solvent loading racks is in operation.

41.      Part C.1.b.2.d of the 2011 FEPTIO and Part C.1.b.2.b of the 2017 FEPTIO require that the overall control efficiency of VOC emissions from the solvent loading racks with vapor recovery systems be greater than 90 percent, by weight.

42.      Part C.1.c.3 of the 2011 FEPTIO and 2017 FEPTIO requires Defendant to maintain an average temperature of the cooling liquid from the vapor recovery system, for any 3-hour block of time, of no more than six degrees Fahrenheit above the normal operating temperature of 55 degrees Fahrenheit.

43.      Part C.1.d.3 of the 2011 FEPTIO and 2017 FEPTIO requires Defendant to operate a continuous temperature monitor that measures and records the vapor recovery system cooling liquid temperature.

44.      Part C.1.d.4 of the 2011 FEPTIO and the 2017 FEPTIO requires Defendant to collect and record the following information each day: (i) the average temperature of the cooling liquid in the vapor recovery system during each of the eight three-hour blocks of time each day; and (ii) a log or record of operating time for the collection (capture) system, control device, monitoring equipment, and the loading racks.

### 2. FEPTIO Requirements for Thin-Film Evaporators (LUWAs)

45.      Part C.3 of the 2011 FEPTIO and Part C.2 of the 2017 FEPTIO include requirements that apply to the LUWAs at Denison.

46.      Part C.3.b.1.a of the 2011 FEPTIO and Part C.2.b.1.a of the 2017 FEPTIO provide that combined total VOC emissions from the LUWAs shall not exceed 3.0 pounds per hour and 3.1 tons per 12 months.  In addition, Part C.3.b.1.d of the 2011 FEPTIO and Part

C.2.b.1.c of the 2017 FEPTIO provide that hazardous air pollutants ("HAPs") from the LUWAs shall not exceed 3.1 tons per 12 months.  In calculating the total HAPs for purposes of meeting the permit requirements, Defendant must count all VOCs as HAPs.

47.     Part C.3.b.2.c of the FEPTIO and Part C.2.b.2.b of the 2017 FEPTIO require all VOC emissions from the LUWAs to be vented to a vapor recovery system that must meet the operational, monitoring, and record keeping requirements of the FEPTIO when one or both of the LUWAs is in operation.  Those provisions also require that the overall control efficiency of VOC emissions from the LUWAs be greater than 90 percent, by weight.

48.     Part C.3.c.1 of the 2011 FEPTIO and Part C.2.c.1 of the 2017 FEPTIO require that the average temperature of the cooling liquid in the vapor recovery system (refrigerated chiller), for any 3-hour block of time, shall not be more than 6 degrees Fahrenheit above the normal operating temperature of 55 degrees Fahrenheit.

49.     Part C.3.d.2 of the 2011 FEPTIO and Part C.2.d.2 of the 2017 FEPTIO require Defendant to operate a continuous temperature monitor that measures and records the vapor recovery system cooling liquid temperature.

50.     Part C.3.d.3 of the 2011 FEPTIO and Part C.2.d.3 of the 2017 FEPTIO require Defendant to collect and record the following information each day: (i) the average temperature of the cooling liquid in the vapor recovery system during each of the eight three-hour blocks of time each day; and (ii) a log or record of operating time for the collection (capture) system, control device, monitoring equipment, and the LUWAs.

51.     Part C.3.b.1.b of the 2011 FEPTIO provides that VOC emissions from the LUWAs shall not exceed 40 pounds per day for each emissions unit or the permittee shall achieve an overall reduction of 85 percent, by weight, of the VOCs for each emissions unit.

### 3. FEPTIO Inspection and Monitoring Requirements

52.     For the solvent loading racks and the LUWAs, Parts C.3.d.4 and C.3.d.5 of the 2011 FEPTIO and Parts B.3.d.4 and B.3.d.5 of the 2017 FEPTIO require Defendant to perform daily visual inspections and quarterly monitoring of all pumps, seals, pipeline valves in liquid service, and process drains.

## RCRA REQUIREMENTS

### A.     RCRA Statutory and Regulatory Program

53.     RCRA and its implementing regulations establish standards applicable to generators of hazardous waste and to hazardous waste treatment, storage, and disposal ("TSD") facilities. 42 U.S.C. §§ 9622 and 6924; 40 C.F.R. Parts 262, 264, and 265. Subparts AA, BB, and CC of 40 C.F.R. Part 264[1] contain air emission standards applicable to TSD facilities. The owner or operator of a TSD facility must obtain an operating permit. 42 U.S.C. § 6925; 40 C.F.R. Part 270.

54.     EPA has authorized the State of Ohio to administer its own hazardous waste program. The federally authorized Ohio regulations are incorporated by reference and codified in 40 C.F.R. § 272.1801.

55.     Owners and operators of closed-vent systems and control devices used to comply with 40 C.F.R. Part 264, Subpart AA, are required to monitor and inspect each control device to ensure proper operation and maintenance of the control device—which includes installing,

---

[1] Part 264 applies to sources with RCRA permits addressing the AA, BB, and CC requirements. Part 265 applies to sources without such permits. Chemical Solvents' TSD requirements were incorporated into its permit during the relevant time period, so Part 265 applied for a time and Part 264 now applies. For simplicity, we cite Part 264 only in this complaint.

calibrating, maintaining, and operating the device according to the manufacturer's specifications. 40 CFR §§ 264.1033(a)(1), (f).

56.     Owners and operators utilizing a condenser as a control device must install, calibrate, maintain, and operate either: (1) a monitoring device equipped with a continuous recorder to measure the concentration level of the organic compounds in the exhaust vent stream from the condenser; or (2) a temperature monitoring device equipped with a continuous recorder. 40 CFR § 264.1033(f)(2)(vi).

57.     Owners and operators of hazardous waste treatment, storage, and disposal facilities that include certain equipment subject to the requirements in 40 CFR §§ 264.1052 through 264.1060 must record in the facility operating record the following: (1) the dates of each compliance test required in 40 CFR §§ 264.1052(e), 264.1053(i), 264.1054, and 264.1057(f); (2) the background level measured during each compliance test; and (3) the maximum instrument reading measured at the equipment during each compliance test.  40 C.F.R. §§ 264.1064(g)(4)(i)-(iii).

58.     Owners and operators of hazardous waste treatment, storage, and disposal facilities must calibrate air monitoring equipment using zero air (less than 10 ppm of hydrocarbon in the air) as the calibration gas.  40 C.F.R. § 264.1063(b)(4).

59.     Generators must determine whether a waste is hazardous as set forth in OAC §§ 3745-51-20 to 3745-51-24 by either: (1) testing the waste in accordance with an approved method; or (2) applying knowledge of the hazardous characteristic of the waste in light of the materials or the processes used.  40 C.F.R. § 262.11(d); OAC § 3745-52-11(C).

60.     Generators that transport hazardous waste for offsite treatment, storage, or disposal must prepare a uniform hazardous waste manifest according to the instructions included in the appendix to 40 C.F.R. § 262. OAC 3745-52-20(A)(1); 40 C.F.R. § 262.20(a)(1).

**B.     Chemical Solvents' RCRA Permit**

61.     Pursuant to Ohio Revised Code Chapter 3734, Denison operates under an Ohio Hazardous Waste Facility Installation and Operation Permit, issued February 2, 2005, U.S. EPA ID number OHD 980 897 656 ("RCRA Permit").  Denison is regulated as both a generator of hazardous wastes and as a treatment, storage, and disposal facility.

62.     Condition A.9 of the RCRA Permit requires Defendant to properly operate and maintain all facilities and systems of treatment and control which are installed or used by the permittee to achieve compliance with the conditions of the permit.  OAC 3745-50-58(E); 40 CFR § 270.30(e).

63.     Part C.12(c) of the RCRA Permit requires Defendant to separate or protect (by means of a dike, berm, wall, or other device) any storage container holding a hazardous waste that is incompatible with any waste or other materials stored nearby in other containers, piles, open tanks, or surface impounds.  OAC 3745-55-77(C); 40 C.F.R. § 264.177(c).

64.     Part B.5 of the RCRA Permit requires Defendant to record inspections in an inspection log or summary and keep these records for at least three years from the date of inspection.  At a minimum, these records must include the date and time of the inspection, the name of the inspector, a notation of the inspector's observations, and the date and nature of any repairs or other remedial actions.  OAC 3745-54-15; 40 CFR § 264.15.

65.     Part D.6 of the RCRA Permit requires Defendant to conduct daily and weekly tank inspections.  At least once per operating day, Defendant must inspect: (1) the above-ground

13

portion of the tank system, if any, to detect corrosion or releases of waste, and (2) the construction materials and the area immediately surrounding the externally-accessible portion of the tank system, including the secondary containment system, to detect erosion or signs of releases of hazardous waste.  A tank's fixed roof and its closure devices must be visually inspected to check for defects that could result in air pollutant emissions.  Defects include, but are not limited to, visible cracks, holes, or gaps in the roof sections or between the roof and the tank wall; broken, cracked, or otherwise damaged seals or gaskets on closure devices; and broken or missing hatches, access covers, caps, or other closure devices.  OAC 3745-55-95; 40 C.F.R. § 264.195(c).

66.     Part B.1(a) of the RCRA Permit requires Defendant to maintain and operate the Facility so as to minimize the possibility of any unplanned release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health and the environment.  OAC 3745-54-31; 40 C.F.R. § 264.31.

67.     Part D.5 of the RCRA Permit requires Defendant to use appropriate controls and practices to prevent spills and overflows from tank or containment systems.  Part D.5(b) of the RCRA Permit requires Defendant to have secondary containment that meets the requirements of OAC 3745-55-93, and that all cement floors and dike walls be free of cracks, gaps, and/or breaks in the concrete.  OAC 3745-55-94; 40 C.F.R. § 264.194.

68.     Part D of the RCRA Permit requires Defendant to have a high level alarm system to warn of overfilling in one or more of its hazardous waste tanks.  OAC 3745-55-94; 40 C.F.R. § 264.194(b)(2).

## CLEAN WATER ACT REQUIREMENTS

**A.**     **CWA Pretreatment Program**

69.     Federal water regulations require certain publically owned treatment works ("POTWs") to establish a POTW Pretreatment Program.  40 C.F.R. § 403.8.  A POTW is a treatment facility that receives sewage, industrial, or other wastes.  40 C.F.R. § 403.3(q) and 42 U.S.C. § 1362(4).

70.     40 C.F.R. § 403.5(c) requires a POTW with a pretreatment program to develop and enforce specific limits on pollutants that may be introduced to the POTW.  These limits are federally enforceable pretreatment limits.  33 U.S.C. § 1317; 40 C.F.R. § 403.5(d).

**B.**     **Pretreatment Standards Applicable to Chemical Solvents**

71.     Section 402 of the CWA, 33 U.S.C. § 1342, establishes the National Pollutant Discharge Elimination System ("NPDES") permit program, authorizing EPA or authorized states to issue NPDES permits regulating the discharge of pollutants, including storm water, into navigable waters.

72.     EPA has authorized the State of Ohio, through the Ohio EPA, to issue NPDES permits.

73.     NEORSD owns and operates wastewater treatment facilities and interceptor sewers in the Cleveland metropolitan area.

74.     On June 28, 2012, Ohio EPA issued NPDES permit 3PF00002*MD to NEORSD, which establishes effluent limits for NEORSD's Southerly Wastewater Treatment Center to discharge to the Cuyahoga River and requires that NEORSD implement a pretreatment program in order to meet those effluent limits.  As part of the pretreatment program, the NPDES permit

15

requires NEORSD to develop and enforce local limits for all significant industrial users as defined in the Ohio Code.

75.     NEORSD has developed local limits and enforces these local limits through administrative orders that it issues to facilities that discharge wastewater into the combined sewer system that flows to the NEORSD Southerly Wastewater Treatment Center.

76.     Both Jennings and Denison discharge to the combined sewer system that flows to the Southerly Wastewater Treatment Plant.

77.     NEORSD has issued the following Administrative Orders setting pretreatment standards to Defendant:

- Denison: No. 3471-202-SIU07 (issued April 25, 2007); No. 796-S-SIU-12 (April 26, 2012); No. CSID-S-SIU-16 (December 9, 2016); No. CSID-S-SIU-16R (January 27, 2017); No. CSID-S-SIU-17R (July 13, 2017).

- Jennings: No. 7389-083-SIU07 (April 25, 2007); No. 896-S-SIU-12 (April 19, 2012); No. CSIJ-S-SIU-17 (April 19, 2017).

78.     These Administrative Orders authorize Defendant to discharge industrial wastewater from Denison and Jennings, as long as the wastewater that is discharged is below pollution limits established in the Administrative Orders.  The Administrative Orders are federally enforceable.  40 C.F.R. § 403.5(d).

**C.     CWA NPDES Program for Storm Water Discharges**

79.     Ohio EPA issued General NPDES Permit OHR000005, a multi-sector general permit for storm water discharges associated with industrial activities, effective January 1, 2012, for a period of five years.  On March 5, 2012, Ohio EPA issued permit #3GR00757*EG to

Defendant, requiring Defendant to comply with NPDES Permit OHR000005 until a new General

NPDES Permit is issued and Ohio EPA contacts Defendant in writing.

80.     Ohio EPA issued General NPDES Permit OHR000006, a multi-sector general

permit for storm water discharges associated with industrial activities, effective June 1, 2017, for

a period of five years.  On January 24, 2018, Ohio EPA issued permit #3GR00757*FG to

Defendant, requiring Defendant to comply with NPDES Permit OHR000006 until a new General

NPDES Permit is issued and Ohio EPA contacts Defendant in writing.

81.     General NPDES Permits OHR000005 and OHR000006 each require Defendant to

update its storm water pollution prevention plan within 180 days of becoming subject to the

permit.

## FIRST CLAIM FOR RELIEF – CAA
### (FEPTIO Violation: Failure to control LUWA emissions)

82.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

83.     During the EPA inspection from June 25-27, 2012, EPA observed a pipe

discharging fluid from the vacuum pump associated with the Denison vapor recovery system into

a collection sump.  EPA representatives recorded a 20,000 ppm reading of VOCs in vapors from

the collection sump and vacuum pump discharge pipe using a flame ionization detector, and

observed visible hydrocarbons being emitted from the sump using an infrared camera.  These

observations showed that not all VOC emissions from the loading racks and LUWA 2 were

vented to the vapor recovery system, as required by Parts C.1.b.2.d and C.3.b.2.c of the 2011

FEPTIO.  Subsequent analysis of the sump liquid showed that the problem was not solved until

closure of the sump, which Defendant states occurred in 2014.

17

84.     Based on the observations and analyses described in the preceding Paragraph, Defendant violated OAC 3745-31-05 of the federally-enforceable SIP and Parts C.1.b.2.d and C.3.b.2.c of its 2011 FEPTIO from at least June 25, 2012 through closure of the sump.

85.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## SECOND CLAIM FOR RELIEF – CAA
### (FEPTIO Violation: Failure to maintain 90% overall control efficiency)

86.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

87.     During the EPA inspection from June 25-27, 2012, Defendant's representatives told EPA inspectors that the vapor recovery system (including the condenser control device) had never been tested to determine its pollutant control efficiency.

88.     On January 22-23, 2014, Defendant conducted a performance test of the Denison vapor recovery system.  The system achieved an average control efficiency of approximately eight percent.

89.     On information and belief, Defendant has not yet conducted a performance test of the Denison vapor recovery system where it achieved the 90 percent control efficiency required by the SIP and the FEPTIOs.

90.     Defendant therefore violated OAC 3745-31-05 of the federally enforceable SIP, Parts C.1.b.2.d and C.3.b.2.c of the 2011 FEPTIO, and Parts C.1.b.2.b and C.2.b.2.b of the 2017 FEPTIO from the issuance of the 2011 FEPTIO on August 16, 2011, through the present.

91.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

18

**THIRD CLAIM FOR RELIEF – CAA**
**(FEPTIO Violation: Failure to comply with emissions limits)**

92.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

93.     EPA calculated the Denison emissions that resulted from the failure to control sump emissions and the failure to maintain 90% overall control efficiency using LUWA data, sump flow rate and temperature data, process condenser efficiency information, information on composition of chemicals processed through the LUWA, and the average control efficiency established by the January 2014 performance test.  Based on these calculations:

a.     Defendant has emitted more than 3.1 tons per year and more than 3 pounds per hour of VOC emissions from the LUWAs from 2012 through the present, in violation of Part C.3.b.1.a of the 2011 FEPTIO and Part C.2.b.1.a of the 2017 FEPTIO.

b.     Defendant has emitted more than 40 pounds per day and achieved an overall reduction of less than 85% by weight of VOC emissions from the LUWAs from 2012 through 2017, in violation of Part C.3.b.1.b of the 2011 FEPTIO.

c.     Defendant has emitted more than 3.1 tons per year of combined HAP emissions from the LUWAs from 2012 through the present, in violation of Part C.3.b.1.d of the 2011 FEPTIO and Part C.2.b.1.c of the 2017 FEPTIO.

94.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations described in the preceding Paragraph subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## FOURTH CLAIM FOR RELIEF – CAA
### (FEPTIO Violation: Failure to comply with vapor recovery system monitoring and temperature requirements)

95.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

96.     During the EPA inspection from June 25-27, 2012, EPA observed that Defendant's continuous temperature monitor electronic recorder, which measures and records the temperature of the cooling liquid in the refrigerated chiller vapor recovery systems, did not record the average temperature over a three-hour block when the solvent loading racks and LUWA were in operation.

a.   According to a discussion between EPA and Defendant's representative during the January 22-23, 2014, EPA site visit, the Jennings refrigerated chiller vapor recovery system did not have a temperature monitor and electronic recorder prior to March 5, 2013.

b.   According to the temperature graphs provided to EPA by Defendant, the Jennings refrigerated chiller vapor recovery system water temperature exceeded 61 degrees Fahrenheit for longer than three hours for a total of approximately 498 hours between March 5, 2013, and January 20, 2014.

c.   According to the temperature graphs provided to EPA by Defendant, the Denison refrigerated chiller vapor recovery system water temperature exceeded 61 degrees Fahrenheit for longer than three hours for a total of approximately 1139 hours between August 16, 2011, and January 20, 2014.

d.   According to the temperature graphs provided to EPA by Defendant, the Denison refrigerated chiller vapor recovery system water temperature monitor did not operate during the following periods: June 5, 2010, to September 15, 2010; January 1, 2011, to March 4, 2011; and January 27, 2012, to February 2, 2012.

e.   Upon information and belief, Defendant has not recorded three–hour block averages of temperatures of the cooling liquid in the refrigerated chiller vapor recovery systems at the Facility at any time since the issuance of the 2011 FEPTIO.

97.     By failing to operate and maintain a continuous temperature monitor and electronic record, by failing to record three-hour-block average temperatures, and by failing to show compliance with the requirement to maintain an average temperature below 61 degrees, Defendant violated OAC 3745-31-05 of the federally-enforceable SIP, Part C.1.c.3 of the 2011 FEPTIO and 2017 FEPTIO, Part C.1.d.3-4 of the 2011 FEPTIO and 2017 FEPTIO, and Parts C.3.d.2-3 of the 2011 FEPTIO and Parts C.2.d.2-3 of the 2017 FEPTIO for each applicable three-hour period from the issuance of the 2011 FEPTIO on August 16, 2011, through the present.

98.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

### FIFTH CLAIM FOR RELIEF – RCRA
**(Failure to meet total organic emissions requirements at Denison)**

99.     Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

100.     As noted above, during Defendant's January 22-23, 2014 performance test, which tested for xylene, acetone, toluene, and total organic compounds, the Denison refrigerated chiller vapor recovery system achieved an average control efficiency of approximately eight percent. On information and belief, Defendant has not performed any other performance tests of this vapor recovery system.

21

101.    Based on Defendant's annual throughput data and the average control efficiency referenced above, Defendant failed to reduce total organic emissions from all affected process vents at Denison either to below 3.1 tons per year or by 95 weight percent, as required by 40 C.F.R. § 264.1032(a).

102.    Defendant therefore violated 40 C.F.R. §§ 264.1032(a) and 264.1033(b) from at least January 23, 2014, through the present.

103.    As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

### SIXTH CLAIM FOR RELIEF – RCRA
**(Failure to meet closed-vent system requirements at Denison)**

104.    Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

105.    During the June 25-27, 2012, inspection, EPA observed that Defendant failed to continuously monitor its condenser control device as required by 40 C.F.R. § 264.1033(f)(2)(vi). The information provided by Defendant to EPA does not indicate that Defendant has subsequently commenced continuous monitoring of its condenser control device.  Therefore, Defendant has violated 40 C.F.R. § 264.1033(f)(2)(vi) from at least June 27, 2012, through the present.

106.    During the June 25-27, 2012, inspection, EPA observed that Defendant did not have an indicator to measure vent stream flow from the LUWAs to the control device, and therefore had no hourly record of vent stream flow, as required by 40 C.F.R. § 264.1033(f)(1). The information provided by Defendant to EPA does not indicate that Defendant has

subsequently commenced continuous monitoring of its vent stream flow.  Therefore, Defendant has violated 40 C.F.R. § 264.1033(f)(1) from at least June 27, 2012, through the present.

107.    Since Defendant did not monitor the exhaust gas stream and did not monitor the vent stream flow, Defendant could not and did not perform daily inspections of the readings from each monitoring device to check control device operation and, if necessary, immediately implement the corrective measures necessary to return the device to compliance, as required by 40 C.F.R. § 264.1033(f)(3).  Therefore, Defendant has violated 40 C.F.R. § 264.1033(f)(3) from at least June 27, 2012, through the present.

108.    During the June 25-27, 2012, inspection, EPA observed that Defendant did not control air emissions from process vents by routing the vent stream through a closed-vent system, as required by 40 C.F.R. § 264.1033(j).  The information provided by Defendant to EPA does not indicate that Defendant has subsequently commenced routing the vent stream through a closed-vent system.  Therefore, Defendant has violated 40 C.F.R. § 264.1033(j) from at least June 27, 2012, through the present.

109.    As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

### SEVENTH CLAIM FOR RELIEF – RCRA
### (Failure to comply with recordkeeping requirements)

110.    Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

111.    Since Defendant did not monitor the exhaust gas stream and did not monitor the vent stream flow, Defendant could not and did not document compliance with the process vent standards in 40 C.F.R. § 264.1032 by recording information in the facility operating record, as

23

required by 40 C.F.R. §§ 264.1035(b).  The information provided by Defendant to EPA does not indicate that Defendant has subsequently complied with the regulation.  Therefore, Defendant has violated 40 C.F.R. § 264.1035(b) from at least June 27, 2012 through the present.

112.    Since Defendant did not monitor the exhaust gas stream and did not monitor the vent stream flow, Defendant could not and did not record design documentation and monitoring, operating, and inspection information for the relevant closed-vent system and control device, as required by 40 C.F.R. §§ 264.1035(c).  The information provided by Defendant to EPA does not indicate that Defendant has subsequently complied with the regulation.  Therefore, Defendant has violated 40 C.F.R. § 264.1035(c) from at least June 27, 2012 through the present.

113.    Defendant failed to maintain records for each tank inspection as required by 40 C.F.R. § 264.1089(b).  Therefore, Defendant violated 40 C.F.R. §§ 264.1035(c) and 264.1089(b) from June 27, 2012, through the present.

114.    As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## EIGHTH CLAIM FOR RELIEF – RCRA
### (Failure to maintain Denison according to requirements)

115.    Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

116.    During the EPA inspection from March 18-20, 2009, EPA observed:

a.      holes and corrosion on Tank 2.  Defendant uses this tank to store and/or treat hazardous wastes.  By allowing this tank to corrode, Defendant failed to maintain and/or operate its facility to minimize the possibility of releases of hazardous waste, in violation of Part B.1(a) of its RCRA Permit, OAC 3745-54-31, and 40 C.F.R. § 264.31 on at least one day.

24

b.       two drums of flammable hazardous waste stored near six containers of oxidizers without separation.  Defendant therefore violated Part C.12(c) of its RCRA Permit, OAC 3745-55-77(C), and 40 C.F.R. § 264.177(c) on at least one day.

c.       that the date and nature of repairs or other remedial actions were not being entered on all inspection logs for containers, equipment, and tanks following notations on the logs that actions were needed.  Defendant therefore failed to record inspections in an inspection log or summary and keep these records for at least three years from the date of inspection, in violation of Part B.5 of its RCRA Permit, OAC 3745-54-15, and 40 CFR § 264.15 on at least one day.

d.       that the cap to the drainage pipe from the secondary containment area for hazardous waste Tanks 21-23 had been left open.  By failing to ensure that the drainage pipe from its secondary containment area remained closed, Defendant failed to use appropriate controls and practices to prevent spills and overflows from tank or containment systems, in violation of Part D.5 of its RCRA Permit, OAC 3745-55-94, and 40 C.F.R. § 264.194 on at least one day.

117.    During the EPA inspection on June 26, 2012, EPA observed that the secondary containment for all hazardous waste tanks had visible cracks and/or chips and gaps in the liner/coating and that Defendant's inspection records document cracks from January 24, 2011 through July 13, 2012.  Defendant therefore failed to have secondary containment that meets the requirements of OAC 3745-55-93, in violation of Part D.5(b) of its RCRA Permit and OAC 3745-55-94 for at least the specified period.

118.    Defendant's weekly and daily inspection records indicate that a high level alarm for its hazardous waste tanks and a tank gauge for a hazardous tank were not operating from

January 21, 2008 until December 30, 2009. Defendant therefore violated Part D of its RCRA Permit, OAC 3745-55-94, and 40 C.F.R. § 264.194(b)(2) for at least the specified period.

119.    According to information provided to EPA by Defendant, Defendant failed to perform or record the results of daily inspections on 14 separate weekdays between July 29, 2011, and June 25, 2012, and on every Saturday and Sunday between July 30, 2011, and January 1, 2012. Defendant therefore failed to conduct inspections according to the schedule required in Part D.6(a) of its RCRA Permit, and failed to inspect at least once each operating day the aboveground portions of the tank system to detect corrosion or releases of waste, in violation of Part D.6(c)(i) of its RCRA Permit, OAC 3745-55-95(B)(1), and 40 CFR § 264.195(c)(1) for at least the specified days.

120.    As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

<u>**NINTH CLAIM FOR RELIEF – RCRA**</u>
**(Failure to secure and control emissions from Denison fixed roof tanks)**

121.    Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

122.    During the June 25-27, 2012, inspection, EPA observed that Defendant had not secured closure devices on all fixed roof tanks when hazardous waste was in the tank, as required by 40 C.F.R. § 264.1085(c)(3).

123.    During the June 25-27, 2012, inspection, EPA measured organic emission levels of 50,000 ppm at the agitator on Tank F2 and 34,000 ppm at the agitator on Tank F23, above the leak threshold of 10,000 ppm for agitators to be considered "no detectable organic emissions" pursuant to 40 C.F.R. § 264.1084(d)(9).

26

124.     During the EPA inspection from March 18-20, 2009, EPA observed corrosion and holes on the roof of Tank 2, which is considered a defect that could result in air pollutant emissions under 40 C.F.R. § 264.1085(c)(4)(i).

125.     Based on the EPA observations described in Paragraphs 122-124, Defendant violated 40 C.F.R. §§ 264.1085(c)(3), 264.1085(c)(4)(i), and 264.1084(d)(9) on at least three days.

126.     As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## TENTH CLAIM FOR RELIEF – RCRA
### (Improper calibration of air monitoring equipment)

127.     Paragraphs 1-81 of this Complaint, specifically including footnote 1, are re-alleged and incorporated by reference.

128.     During the June 25-27, 2012, inspection, Defendant's environmental compliance contractor told EPA inspectors that he calibrates his monitoring equipment with air from inside the office building at the Facility, and that calibration values were not recorded.  The information provided by Defendant to EPA does not indicate that Defendant has subsequently changed that practice.   Defendant does not keep records indicating the total hydrocarbon concentration of the air in the office building.  Because Defendant did not verify zero air in calibrating its monitoring equipment, Defendant violated 40 C.F.R. § 264.1063(b)(4) from September 2010 through the present.

129.     As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

27

## ELEVENTH CLAIM FOR RELIEF – RCRA
### (Failure to evaluate hazardous waste and prepare hazardous waste manifest)

130.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

131.     EPA received two reports from Ross Incineration Services, dated June 13, 2014, indicating that Defendant sent two containers of hazardous waste to Ross without manifests. According to these reports, the waste was received by Ross on May 14, 2014, and May 26, 2014. Chemical analyses by Ross indicate that the waste in the containers was characteristic ignitable hazardous waste (D001) because the waste flashed at 120 and 121 degrees Fahrenheit.

132.     Defendant failed to determine whether the waste referred to in the preceding Paragraph was hazardous and failed to prepare a uniform hazardous waste manifest for that waste.  Defendant therefore violated OAC §§ 3745-52-20(A)(1) and 3745-52-11(C), and 40 C.F.R. §§  262.20(a)(1) and 262.11(c) on at least two days.

133.     As provided in Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.


## TWELTH CLAIM FOR RELIEF – CWA
### (Failure to comply with pretreatment pollution limits)

134.     Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

135.     Defendant discharged wastewater in excess of the effluent limitations established in the applicable Denison Administrative Orders issued by NEORSD on 31 occasions between January 11, 2012, and May 19, 2018, as set forth in Attachment A.  Defendant therefore violated its Administrative Orders, 40 C.F.R. § 403.5(d), and 33 U.S.C. § 1317(d) on each instance in Attachment A.

136.    Defendant discharged wastewater in excess of the effluent limitations established in the applicable Jennings Administrative Orders issued by NEORSD on 20 occasions between December 16, 2011, and June 13, 2016, as set forth in Attachment B.  Defendant therefore violated its Administrative Orders, 40 C.F.R. § 403.5(d), and 33 U.S.C. § 1317(d) on each instance in Attachment B.

137.    As provided in Section 309 of the CWA, 33 U.S.C. § 1319, the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## THIRTEENTH CLAIM FOR RELIEF – CWA
### (Failure to update Storm Water Pollution Prevention Plan)

138.    Paragraphs 1-81 of this Complaint are re-alleged and incorporated by reference.

139.    Defendant failed to update its existing storm water pollution prevention plan within 180 days of becoming subject to General NPDES Permit OHR000005.  Defendant also failed to update its existing storm water pollution prevention plan within 180 days of becoming subject to the subsequent General NPDES Permit OHR000006.  As a result, Defendant's plan does not cover all current operations or the entire area of its industrial activity.

140.    Defendant therefore violated its permit #3GR00757*FG and 33 U.S.C. § 1342 from September 3, 2013, to the present.

141.    As provided in Section 309 of the CWA, 33 U.S.C. § 1319, the violations in this claim subject Defendant to injunctive relief and to civil penalties in the amounts set forth in Paragraph 28 of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set forth above, the United States requests that this Court:

1.      Order such injunctive relief as is necessary to compel Defendant to bring the Facility into, and thereafter maintain, compliance with the CAA, 42 U.S.C. § 7401 et seq., RCRA, 42 U.S.C. § 6901 et seq., CWA, 33 U.S.C. § 1251 et seq., their implementing regulations, and any permits or administrative orders issued to Defendant for the Facility pursuant to the foregoing statutes;

2.      Assess a civil penalty against Defendant for each day of each separate violation of the CAA, RCRA, and CWA;

3.      Award Plaintiff its costs of this action; and

4.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

KAREN DWORKIN
Deputy Section Chief
Environment and Natural Resources Division
United States Department of Justice


THOMAS A. BENSON
ANNA E. CROSS
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611

OF COUNSEL

JOSH ZAHAROFF
Associate Regional Counsel
United States EPA, Region 5
Chicago, IL  60604

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

STEVEN J. PAFFILAS
Assistant United States Attorney
Northern District of Ohio
801 West Superior Avenue; Suite 400
Cleveland, OH  44113